**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF MISSOURI**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| OZODBEK S. DAVLATOV, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 6:26-cv-03772-SRB |
| | ) | |
| JASON JOHNSON, et al., | ) | |
| | ) | |
| Respondents. | ) | |

# ORDER

Before the Court is Petitioner Ozodbek S. Davlatov's ("Petitioner") Petition for Writ of Habeas Corpus ("the Petition"). (Doc. #1.) For the reasons below, the Court GRANTS the Petition.

## I. FACTUAL BACKGROUND

Petitioner is a citizen of Uzbekistan. Petitioner entered the United States on or about February 16, 2023. Petitioner has a pending asylum case. The record contains no evidence that Petitioner has any criminal convictions. On October 26, 2026, Petitioner was stopped by a state trooper during a traffic enforcement stop in Ohio. The state trooper's office turned Petitioner over to Immigration and Customs Enforcement ("ICE"). Petitioner is currently detained in the Greene County Jail in Springfield, Missouri.

Petitioner filed his Petition on November 6, 2026. Petitioner alleges he is being detained without due process and requests his immediate release. On November 10, 2026, Respondents timely filed their response to the Petition. The parties' arguments are addressed below.

## II. DISCUSSION

Respondents argue Petitioner primarily "argues that his present mandatory detention without a bond opportunity under Section 1225(b)(2)(A) violates due process" and that this argument is "mistaken – both as to procedural due process and substantive due process." (Doc. #4, p. 3.) Respondents point to *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026) for the proposition that aliens should be "treated the same as if they lawfully presented themselves at a port of entry or were caught at the border." (Doc. #4, p. 6.) However, *Avila* did not resolve whether detention without any opportunity for release, or an individualized determination, complies with the due process requirements in the Fifth Amendment.

Respondents further argue that Petitioner's procedural due process claim fails because "by enacting Section 1225, Congress sought to eliminate the preferential treatment of aliens who violate the country's immigration laws by entering illegally and evading detection.[1] Under [Petitioner's] rationale, aliens who violate federal law would enjoy greater constitutional protections with respect to their removal proceedings than those who comply with it." (Doc. #4, p. 7.)

In support of this argument, Respondents cite, among other cases, *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020) and *Demore v. Kim*, 538 U.S. 510, 517 (2003).[2]

---

[1] The Court notes that this policy argument is inapplicable here because Petitioner was not evading detection. Since crossing the border and being placed on parole in 2023, Petitioner has applied for asylum and obtained work authorization.

[2] The Court further rejects Respondents' reliance on *Connecticut Dep't of Pub. Safety v. Doe*, where the Supreme Court held that "[p]laintiffs who assert a right to a hearing under the Due Process Clause must show that the facts they seek to establish in that hearing are relevant under the statutory scheme." 538 U.S. 1, 8123 (2003). That case is "highly distinguishable" as *Doe* "arose in an entirely different context" than "an immigration detainee's challenge to their detention without a bond hearing." *Osorto-Diaz v. Collins, et. al.*, No. 1:26-CV-1548-RP, 2026 WL 1763275, at *3 (W.D. Tex. June 18, 2026); *Hernandez, v. ICE Field Off. Dir.*, No. EP-26-CV-67-KC, 2026 WL 503958, at *2 (W.D. Tex. Feb. 23, 2026).

"However, these cases recognize limited procedural rights in the admission context, not the detention context, and are factually distinct from the case at hand." *Marin-Mendoza v. Arnott*, No. 6:26-cv-3185-MDH, 2026 WL 1020817, at *2 (W.D. Mo. Apr. 15, 2026). For example, in *Thuraissigiam*, the Supreme Court rejected a noncitizen's argument that his expedited removal proceeding violated due process, and held that the noncitizen "ha[d] only those rights *regarding admission* that Congress has provided by" § 1225. *Id.* (emphasis supplied); *see also Demore*, 538 U.S. 517–18 (Section 1226(c) mandates detention during removal proceedings for a *limited class of deportable aliens*—including those convicted of an aggravated felony.").

Upon review, the Court rejects Respondents' arguments that *Thuraissigiam* and *Demore* apply to this case. "As other courts addressing similar arguments have noted, *Thuraissigiam* dealt with a due process challenge to the sufficiency of § 1225's process for expedited removal—not with a challenge to prolonged mandatory detention." *Alvarez v. Noem*, No. 4:26-CV-00729, 2026 WL 522322, at * 4 (S.D. Tex. Feb. 25, 2026) (citing cases). "Since *Thuraissigiam* did not address whether noncitizens mandatorily detained under § 1225(b) have a constitutional due process right to challenge the fact or length of their detention, the Court finds that *Thuraissigiam* does not foreclose Petitioner's due process claim." *Id.* (citation and quotation marks omitted) (cleaned up). The Court agrees with this case law. Consequently, the Court turns to the due process issues raised herein.

"[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "Due process is flexible . . . [and] calls for such procedural protections as the particular situation demands." *Jennings v. Rodriguez*, 583 U.S. 281, 312-315 (2018). To determine whether a civil detention violates a detainee's due process rights, courts

apply the three-part balancing test set forth in *Mathews v. Eldridge*, 424 U.S. at 335. Courts must consider the following factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.*

Here, the first *Mathews* factor weighs in favor of Petitioner. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690; *see also Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action"). "Respondents do not contend that Petitioner failed to meet the conditions of his release; they have identified no violation, and the Cancellation of Order section of his release order was never completed." (Doc. #1, p. 28.) Petitioner has a strong private interest in remaining out of custody so that he may present his asylum claim to the immigration court. The Court thus finds that Petitioner has a strong liberty interest in his freedom from detention.

The second *Mathews* factor, the risk of erroneous deprivation, also weighs in favor of Petitioner. "The regulations authorizing ICE to release a noncitizen from custody require that the noncitizen 'demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons' and that the noncitizen is 'likely to appear for any future proceeding.'" *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (quoting 8 C.F.R. § 1236.1(c)(8)). Here, the record does not show that Petitioner has any criminal history.

Respondents have not shown that he presents a danger or a flight risk. The Court finds that the second factor weighs in favor of Petitioner.

Under the third *Mathews* factor, even a weighty private interest must be balanced against the government's interest. Respondents have a generalized interest in ensuring noncitizens appear for their removal hearings and do not pose a risk to the communities in which they live. But this interest is not served by detaining a noncitizen who lacks a criminal history and has not been shown to present a danger or a flight risk. Thus, the third factor weighs in favor of Petitioner.

The Court finds that the proper remedy for the violation of Petitioner's due process rights is immediate release from custody. Based on the significant weight of the liberty interests at stake, the Court concludes that immediate release is appropriate. *See Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 499 (S.D.N.Y. 2025) (ordering immediate release from custody after determining that the petitioner's continued detention violated procedural due process).

## III. CONCLUSION

Based on the above, and on the full record before the Court, IT IS HEREBY ORDERED THAT:

1. Petitioner's Petition for a Writ of Habeas Corpus (Doc. #1) is GRANTED.
2. Respondent shall immediately release Petitioner, but no later than 48 hours from the date of this Order.
3. When Petitioner is released, Respondent must return to him any property, personal effects, and documents that they have taken from him, including identity documents, foreign issued identity documents, and immigration documents.

4. Respondent may not administratively recharacterize the release granted by this Order as grounds to impose conditions or re-impose existing conditions in conjunction with release.
5. Respondent shall confirm Petitioner's release with the Court within 72 hours from the date of this Order.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Dated: November 16, 2026